**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

XENIA L.,

                                    Plaintiff,                          No. 5:18-CV-224
                                                                        (CFH)
             v.

ANDREW SAUL,[1]

                            Defendant.

_____

**APPEARANCES:**                               **OF COUNSEL:**

Olinsky Law Group                              HOWARD D. OLINKSY, ESQ.
300 S. State Street
Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Social Security Administration                 LUCY WEILBRENNER, ESQ.
625 JFK Building                               Special Assistant U.S. Attorney
15 New Sudbury Street
Boston, Massachusetts 02203
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

        Plaintiff Xenia L. brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("the Commissioner") denying her

applications for disability insurance benefits and supplemental security income ("SSI")

_____

        [1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the
defendant in this action.

benefits. Dkt. No. 1 ("Compl.").[2] Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 9, 12. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born in 1972, and completed eleventh grade. T. 81, 82.[3] She does not have a driver's license. Id. at 82. Plaintiff last worked at Macy's as cashier in 2013. Id. at 82, 100. Prior to that, she was employed as a sales clerk and a housekeeper. Id. at 102-03.

On January 16, 2014, plaintiff protectively filed a Title II application for disability insurance benefits. T. 127, 239. On that same day, plaintiff also protectively filed a Title XVI application for SSI benefits. Id. at 127, 246. In both applications, plaintiff alleged a disability onset date of December 1, 2013. See id. The applications were initially denied on July 9, 2014. Id. at 147. Plaintiff requested a hearing, which was postponed so that she could obtain representation. Id. at 113-20, 155. A hearing was later held on June 15, 2016 before Administrative Law Judge ("ALJ") Rosanne M. Dummer. Id. at 78-112. ALJ Dummer issued an unfavorable decision on September 9, 2016. Id. at 55-72. On

---

[2] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 5.

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

December 22, 2017, the Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-6.  Plaintiff commenced this action on February 21, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial

3

evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing

Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the

ALJ's finding is supported by substantial evidence, such finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]."

Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).


## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit

. . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an

affliction that is so severe that it renders an individual unable to continue with his or her

previous work or any other employment that may be available to him or her based on his

or her age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment

must be supported by "medically acceptable clinical and laboratory diagnostic

techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairments is "based

[upon] objective medical facts, diagnoses or medical opinions inferable from the facts,

subjective complaints of pain or disability, and educational background, age, and work

experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since December 1, 2013, the alleged onset date. T. 57. The ALJ found at step two that plaintiff had the severe impairments of bipolar disorder, borderline personality disorder, and polysubstance abuse disorder (in reported remission). Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 58. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but has some nonexertional limitations. Secondary to mental impairments, [plaintiff] could understand, remember, and carry out simple instructions, and apply judgment and responded appropriate for simple work related decisions. She could sustain attention and concentration for at least two-hour segments of time in an eight-hour day. [Plaintiff] could tolerate work related, task oriented, brief and superficial contact with coworkers and supervisors; she could tolerate rare to no contact with the public. [Plaintiff] could adapt in work settings involving simple, routine work.

Id. at 59. At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a housekeeping cleaner as it did not "require the performance of work-related activities precluded by [plaintiff's] residual functional capacity." Id. at 69. At step five, the ALJ determined that, after consulting a vocational expert, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Id. at 70. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined

6

in the Social Security Act, from December 1, 2013, through the date of this decision." Id. at 71.

## D. Arguments

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because she failed to prescribe adequate weight to the opinions of the consultative examiner and plaintiff's treating nurse practitioner. Dkt. No. 9 at 12-19. Plaintiff also argues that the RFC determination does not properly account for plaintiff's stress limitations. See id. Conversely, the Commissioner argues that the ALJ properly assessed the medical opinion evidence when formulating her RFC determination. Dkt. No. 12 at 7-14.

## E. Relevant Medical Evidence

### 1. Christina Caldwell, Psy.D

Plaintiff met with Dr. Christina Caldwell, Psy.D on May 19, 2014 for a psychiatric evaluation. T. 450. Plaintiff reported difficulty falling asleep and indicated that she frequently woke up during the night with increased appetite. Id. She stated that her symptoms worsened after her brother's death in 2009. Id. at 450-51. Plaintiff reported dysphoric moods, crying spells, hopelessness, loss of usual interests, irritability, social withdrawal, diminished sense of pleasure, diminished self esteem, fatigue and loss of energy, and suicidal ideation. Id. at 451. Plaintiff also reported distractability, psychomotor agitation, impulsivity, flight of ideas, being easily angered, and crying and

yelling when angry.  Id.  Plaintiff indicated that she has thrown things when angry.  Id.

She stated that she experienced excessive apprehension, worry, restlessness, muscle

tension, nightmares, hyperstartle response, hypervigilence, and flashbacks to an abuse

history.  Id.  Plaintiff reported daily panic attacks, seeing shadows and dead people, and

hearing voices.  Id.  The hallucinations were sporadic.  Id.

Dr. Caldwell indicated that plaintiff's demeanor and response to questions was

"cooperative, yet irritable."  T. 451.  Plaintiff's manner of relating, social skills, and overall

presentation were "fair to poor."  Id.  Plaintiff was well-groomed with normal posture.  Id.

She trembled throughout the evaluation, but her eye contact was appropriate.  Id.

Plaintiff's speech intelligibility was fluent.  Id.  Her expressive and receptive languages

were adequate.  Id.  Her thought process was coherent and goal directed with no

evidence of hallucinations, delusions, or paranoia in the evaluation setting.  Id. at 452.

Plaintiff's affect was tense, her mood irritable, and her sensorium clear.  Id.  She was

oriented to person, place, and time.  Id.  Plaintiff's attention and concentration was mildly

impaired as she was unable to complete serial 3s.  Id.  She could, however, complete

simple calculations.  Id.  Plaintiff's recent and remote memory skills were also mildly

impaired.  Id.  She completed three out of three objects immediately, one out of three

objects after five minutes, five digits forward, and four digits backwards.  Id.  Plaintiff's

intellectual functioning was average, and her general fund of information was "somewhat

limited."  Id.  Her insight and judgment were "fair to poor."  Id.

As to her mode of living, plaintiff was able to dress, bathe, and groom herself, but

sometimes lacked the desire to complete the tasks.  T. 452.  She was able to cook

sometimes.  Id.  She often could not finish cleaning because of fatigue, and needed help doing her laundry.  Id.  She did not grocery shop.  Id.  She could not manage her finances because she "overspend[s]."  Id.  Plaintiff indicated that she had a "generally good" relationship with her boyfriend, but had no friends outside of her family.  Id.  She was close with her cousin, but indicated that she "can't stand" the rest of her family.  Id.  Plaintiff stated that she enjoyed watching television, and generally stayed in bed all day.  Id. at 453.

Dr. Caldwell opined that plaintiff had no limitations in her ability to follow and understand simple directions and instructions.  T. 453.  Plaintiff had mild limitation in her ability to perform simple tasks independently.  Id.  Plaintiff had moderate limitation in her ability to perform complex tasks independently.  Id.  Dr. Caldwell opined that plaintiff had mild limitations in her ability to maintain attention and concentration, maintain a regular schedule, and learn new tasks.  Id.  She had moderate limitations in her ability to make appropriate decisions and relate adequately with others.  Id.  Plaintiff had moderate to marked limitation in her ability to appropriately deal with stress.  Id.  Dr. Caldwell concluded that plaintiff's limitations appeared "consistent with psychiatric problems that may significantly interfere with her ability to function on a daily basis."  Id.  She recommended that plaintiff continue individual psychological counseling, psychiatric intervention, and medical follow up.  Id.  Her prognosis was guarded.  Id.

### 2. Joyce Behling, Nurse Practitioner

On February 4, 2016, plaintiff's Nurse Practitioner ("NP") Joyce Behling completed

a form entitled "Mental Residual Functional Capacity Statement." T. 615. She indicated

that she met with plaintiff weekly. Id. The form asked NP Behling to rate plaintiff's

"mental abilities to function independently, appropriately, effectively, and on a sustained,

consistent, useful and routine basis, without direct supervision or undue interruptions or

distractions – 8 hours per day, 5 days per week – in a regular, competitive work setting

for more than six consecutive months." Id. NP Behling opined that plaintiff's mental

abilities precluded her from remembering locations and work-like procedures;

understanding and remembering very short and simple instructions; and understanding

and remembering detailed instructions for 5 percent of an eight-hour workday. Id. at 615-

16. She indicated that plaintiff's mental abilities precluded her from carrying out very

short and simple instructions for 5 percent of an eight-hour workday; carrying out detailed

instructions, sustaining an ordinary routine without special supervision, and maintaining

socially appropriate behavior and adhering to basic standards of neatness and

cleanliness for 10 percent of an eight-hour workday; and maintaining attention and

concentration for extended periods of time, performing activities within a schedule;

maintaining regular attendance; and being punctual within customary tolerances, working

in coordination with or in proximity to others without being distracted by them, and

completing a normal workday and workweek without interruptions from psychologically

based symptoms, and perform at a consistent pace without an unreasonable number and

length of rest periods for 15 percent of an eight-hour workday. Id. at 616.

NP Behling opined that plaintiff's mental abilities precluded her from responding

appropriately to changes in the work setting for 15 percent of an eight-hour workday;

being aware of normal hazards and taking appropriate precautions for 5 percent of an eight-hour workday; and setting realistic goals or making plans independently of others for 10 percent of an eight-hour workday. Id. at 617. NP Behling indicated that plaintiff had difficulty hearing and suffered from seizures which, due to their unpredictability, could cause complications in work production. Id. She noted that plaintiff would be off task for 30 percent of an eight-hour workday, absent more than six days per month, and be unable to complete an eight-hour workday due to periodic medical treatment or mental impairments for more than six days per month. Id. NP Behling opined that plaintiff would be unable to sustain useful, consistent, and routine work without continuous supervision or undue interruptions or distractions for 20 percent of the time. Id. at 617-18. She indicated that plaintiff would be unable to obtain and retain work in a competitive work environment for eight hours per day, five days a week. Id. at 618.

### 3. Stuart Gitlow, M.D.

On July 22, 2016, Dr. Stuart Gitlow, an impartial medical expert, completed medical interrogatories concerning plaintiff's limitations. T. 1024. After reviewing plaintiff's medical records and history, Dr. Gitlow opined that plaintiff had no restrictions in her activities of daily living; mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and moderate repeated episodes of decompensation, each of extended deterioration. Id. at 1025. In a letter to the ALJ explaining his analysis of plaintiff's impairments, Dr. Gitlow stated that plaintiff suffered from "intermittent episodes of anger and mood lability, but generally when seen clinically,

her mental status has been normal." Id. at 1031. He indicated that "[o]utside of the periods of decompensation, [plaintiff] is documented as able to carry out ADLs, maintain social relationships, and to be cognitively intact with mild impairment. Id.

Dr. Gitlow opined that plaintiff had no limitations understanding and remembering simple instructions; carrying out simple instructions; and making judgments on simple work-related decisions. T. 1032. He further opined that plaintiff had mild limitations understanding and remembering complex instructions; carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with the public; interacting appropriately with supervisors; interacting appropriately with co-workers; and responding appropriately to usual work situations and to changes in a routine work setting. Id.

## F. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v.

*Astrue*, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal*, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. *See* *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. *See* id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. *See* *Martone*, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Martone*, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. *See* *New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the

13

Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### 1. Dr. Caldwell

In granting "limited weight" to Dr. Caldwell's consultative psychiatric evaluation, the

ALJ reasoned that the assessment that plaintiff had a marked limitation appropriately dealing with stress seemed "to be based on the one-time evaluation, but is not corroborated elsewhere." T. 66. The ALJ also noted that plaintiff's conservative cognitive behavioral therapy and medication management "appear[ed] to enhance coping skills and behavior management, though no disabling problems [were] shown." Id. The ALJ found it notable that Dr. Caldwell "recommended only for [plaintiff] to continue conservative counseling and psychiatric intervention and medical follow up. which would not preclude working." Id. Moreover, the ALJ indicated that, with the exception of mild attention, concentration, and memory problems, plaintiff's mental status examination was "essentially normal." Id.

Insofar as plaintiff argues that the ALJ improperly dismissed plaintiff's stress limitations, the Court disagrees. As an initial matter, the Court notes that Dr. Caldwell's assessment that plaintiff retained a marked limitation in her ability to deal with stress does not automatically mandate a finding of disability. See Miller v. Berryhill, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *4 (W.D.N.Y. Sept. 20, 2017) ("[T]he Court notes that Dr. Ransom's opinion does not necessarily mandate a conclusion of disability due to the complete inability to deal with stress. Other courts in this Circuit have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a "marked" limitation in performing a work-related function, such as found by Dr. Ransom.") (citing inter alia Fiducia v. Comm'r of Soc. Sec., No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) ("The fact that [claimant] was found to have a marked limitation interacting with others does not conclusively demonstrate that she is

unable to work, particularly given the fact that the ALJ limited [her] to work that does not require more than occasional interaction with the public and co-workers."); see Davis v. Comm'r of Soc. Sec., No. 17-CV-6804P, 2019 WL 1870814, at *3 (W.D.N.Y. Apr. 26, 2019) ("Contrary to Davis's contention, 'marked' limitations do not necessarily constitute an inability to perform work."); Perry v. Comm'r of Soc. Sec., No. 3:15-CV-0758 (GTS), 2017 WL 5508775, at *7 (N.D.N.Y. Jan. 23, 2017), aff'd sub nom. Perry v. Berryhill, 711 F. App'x 9 (2d Cir. 2017) (summary order) ("This Court has found that a claimant with a marked limitation in performing a work-related function could perform that function occasionally.").  Here, the ALJ found that Dr. Caldwell's stress assessment was not supported by the record.  T. 66.  Dr. Gitlow, whom the ALJ granted "great weight," found that after reviewing the medical evidence in the record, that plaintiff had mild limitations interacting appropriately with the public, supervisors, and coworkers; and responding appropriately to usual work situations and changes in a routine work setting.  Id. at 1033. Although plaintiff sets forth instances wherein plaintiff responded negatively during "stressful" situations, Dkt. No. 9 at 14 (citing T. 85, 518, 774, 776, 896, 974), the Commissioner also notes areas within the record wherein plaintiff demonstrated normal mental status examinations and maintained social interactions and relationships with only a mild impairment, see Dkt. No. 12 at 8 (citing 640-42, 644, 675, 679, 680-81, 922, 930, 938, 941-42, 1030-31).  It was the ALJ's discretion to weigh the evidence concerning plaintiff's stress limitations and make a RFC determination that was consistent with the evidence as a whole.  See Bliss v. Colvin, No. 3:13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence

and resolve material conflicts where sufficient evidence provides for such."); White v.

Colvin, No. 6:13-CV-0084, 2014 WL 1311993, at *7 (N.D.N.Y. Mar. 31, 2014) ("[I]t is the

ALJ's job to properly evaluate the evidence and reconcile any apparent inconsistencies.");

Petell v. Comm'r of Soc. Sec., No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y.

Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and

resolve material conflicts where sufficient evidence provides for such."); Balsamo v.

Chater, 142 F.3d 75, 81 (2d Cir. 1998) (noting that the ALJ is "free to resolve issues of

credibility as to lay testimony or choose between properly submitted medical opinions").

Further, the Court notes that the ALJ did not err in affording greater weight to the Dr.

Gitlow's opinion to the extent it was consistent with other evidence in the record. See

Winder v. Berryhill, 369 F. Supp. 3d 450, 457 (E.D.N.Y. 2019) ("Although, the Court is

generally required to defer to the medical opinion of a treating physician, those findings

may not be accorded controlling weight if they are inconsistent with other substantial

evidence, including the opinions of other medical experts.") (citation omitted).

Moreover, the marked limitation found by Dr. Caldwell is not necessarily

inconsistent with the ALJ's RFC determination. The ALJ found that plaintiff "could

tolerate work related, task oriented, brief and superficial contact with coworkers and

supervisors; she could tolerate rare to no contact with the public. [Plaintiff] could adapt in

work settings involving simple, routine work." T. 59; see Miller, 2017 WL 4173357, at *5-

6 (concluding that the ALJ properly considered the consultative examiner's opinion that

the plaintiff had "moderate to marked" limitations in appropriately dealing with stress by

restricting the plaintiff to "unskilled jobs that involve only occasional changes in the work

environment, that require her to make only occasional work-related decisions and judgments, and do not entail teamwork or collaboration"); Phelps v. Colvin, No. 15-257, 2017 WL 372738, at *2 (W.D. Pa. Jan. 26, 2017) ("A limitation to occasional interaction may accommodate a marked limitation."); Fiducia, 2015 WL 4078192, at *4 ("The fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers."); Bush v. Comm'r of Soc. Sec., No. 7:16-CV-1007 (GTS), 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (concluding that the plaintiff could perform simple work where she retained a moderate-to-marked limitation in her ability to deal with stress). As such, the ALJ concludes that the ALJ properly assessed plaintiff's stress restrictions, and rendered an RFC determination consistent with the record.

Next, plaintiff argues that the ALJ's assessment that plaintiff's "participat[ion] in conservative cognitive behavioral therapy and medication management would appear to enhance coping skills and behavior management, though no disabling problems were shown" based on Dr. Caldwell's recommended that plaintiff continue "conservative counseling and psychiatric intervention and medical follow up, which would not preclude working" is an improper characterization and relies on the ALJ's own lay opinion. Dkt. No. 9 at 14-15; T. 66. The Court disagrees. An ALJ may consider a conservative treatment regiment "in conjunction with other substantial evidence to help support a conclusion that she was not disabled." Ortis Torres v. Colvin, 939 F. Supp. 2d 172, 183 (N.D.N.Y. 2013) (citing Burgess, 537 F.3d at 129). The Court agrees with the

18

Commissioner that the ALJ's comment indicated that plaintiff had received conservative treatment for her mental impairments, and that Dr. Caldwell recommended that plaintiff continue with that care. See Dkt. No. 12 at 15. As the Commissioner noted, the ALJ reasonably considered the recommendation that plaintiff continue with her current treatment regimen in conjunction with the other medical evidence in the record. See id.; Ortis Torres, 939 F. Supp. 2d at 183.

Plaintiff also takes issue with the ALJ's characterization of Dr. Caldwell's examination as "essentially normal." Dkt. No. 12 at 9; T. 66. Plaintiff cites to Dr. Caldwell's observations that plaintiff: was "cooperative, yet irritable"; her manner of relating, social skills, and overall presentation as "fair to poor"; she trembled throughout the examination; presented with a tense affect and irritable mood; was unable complete serial 3s and could only remember one out of three objects after five minutes; and had a "somewhat limited" general fund of information. See Dkt. No. 9 at 16 (citing T. 451-52). However, as the Commissioner indicates, Dr. Caldwell also observed that plaintiff had appropriate eye contact; fluent speech intelligibility; clear quality of voice; adequate expressive and receptive language; coherent and goal directed thoughts with no evidence of hallucinations, delusions, or paranoia; and clear sensorium. Dkt. No. 12 at 10 (citing T. 451-52). Although plaintiff was unable to completed serial 3s and failed to remember more than one out of three objects after five minutes, Dr. Caldwell indicated that her attention and concentration and recent and remote memory skills were only mildly impaired, which the ALJ explicitly indicated in her decision. T. 452. To the extent that this evidence constitutes a conflict, it was within the ALJ's discretion to weigh this

19

evidence against other evidence in the record and resolve the conflict accordingly.  See

Armstrong v. Comm'r of Soc. Sec., No. 1:06-CV-1049 (DNH), 2009 WL 2883046, at *4

(N.D.N.Y. Sept. 4, 2009) ("The ALJ was well within his discretion to resolve the

evidentiary conflict presented by Dr. Zimring's opinion."); Crouch ex rel. K.C. v. Astrue,

No. CIV.A. 5:11-820, 2012 WL 6948676, at *8 (N.D.N.Y. Dec. 31, 2012), report and

recommendation adopted 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013) ("[I]t is an [ALJ's]

exclusive prerogative to sort through and resolve conflicts in the evidence.").

The ALJ's assessment is consistent with the opinion of the state agency

psychologist, who found moderate limitations in plaintiff's ability to: understand and

remember detailed instructions; carry out detailed instructions; maintain attention and

concentration for extended periods; perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances; work in coordination with or in

proximity to others without being distracted by them; complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; accept

instructions and respond appropriately to criticism from supervisors; get along with

coworkers or peers without distracting them or exhibiting behavioral extremes; respond

appropriately to changes in the work setting; travel in unfamiliar places or use public

transportation; and set realistic goals or make plans independently of others.  T. 133-34.

Still, despite these moderate limitations, the state agency psychologist opined that

plaintiff could perform unskilled work: "[u]nderstand, carry out & remember simple

instructions; [u]se appropriate judgment to make simple, work related decisions;

[r]espond appropriately to supervision, co-workers & work situations; [d]eal with changes in a routine work setting." Id. at 134.

It is well-settled that it is not improper for an ALJ to adopt only a portion of a medical source's opinion; indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, he or [she] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Thus, based on the record as a whole, as discussed above, the Court concludes that the ALJ's decision to discount certain portions of Dr. Caldwell's opinion was supported by substantial evidence. See Dierdre R. v. Comm'r of Soc. Sec., No. 5:17-CV-0395 (TWD), 2018 WL 4565769, at *8 (N.D.N.Y. Sept. 24, 2018) (concluding that the ALJ did not err in discounting the consultative examiner's opinion that the plaintiff had moderate to marked limitations reaching where the record gleaned generally unremarkable findings); Babcock v. Berryhill, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked limitations reaching); Disotell v. Comm'r of Soc. Sec., No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *5 (N.D.N.Y. Aug. 14, 2017) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had marked limitations in reaching). As such, remand on this ground is inappropriate.

## 2. NP Behling

The opinions of non-acceptable sources,[4] or "other sources," "may be used 'to show the severity of the individual's impairments(s) and how it affects the individual's ability to function.'" Beckers v. Colvin, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (quoting SSR 06-3p, 2006 WL 2329939, at *3, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims (S.S.A. Aug. 9, 2006)). "SSR 06-03p states that an ALJ should apply the same factors to analyze the opinion of a non-acceptable medical source as would be used to analyze the opinion of an acceptable medical source." Id. (citing SSR 06-3p). Indeed, although such sources are not considered "medical opinions" under the regulations and, thus, are not entitled to enhanced weight, "these assessments are nevertheless 'important and should be evaluated on key issues such as impairment severity and functional effects.'" Paquette v. Colvin, No. 7:12-CV-1470 (TJM/VEB), 2014 WL 636343, at *6 (N.D.N.Y. Feb. 18, 2014) (quoting SSR 06-03p, 2006 WL 2329939, at *3). The Second Circuit has made clear that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995).

In granting "little to no weight" to NP Behling's medical opinion, the ALJ stated that NP Behling's statements in the form entitled "Mental Residual Functional Capacity Statement" were inconsistent with the overall record and her own progress notes. T. 67.

---

[4]"Medical sources who are not 'acceptable medical sources[ ]' [include] nurse practitioners, physician assistants, licensed clinical social workers, chiropractors, audiologists, and therapists." SSR 06-3p, 2006 WL 2329939, at *2.

The ALJ noted that plaintiff met with NP Behling for monthly medication check-ups for approximately twenty to thirty minutes per visit.  Id.  The ALJ further indicated that plaintiff had been "respond[ing] favorably to medication; [ ] was 'doing well' and 'felt good' to the point that she declined increases and requested decreased doses."  Id. (citations omitted).  In the check-box form, NP Behling indicated eight categories wherein she believed that plaintiff would be unable to perform for 15 percent or more of an eight-hour workday.  Id. at 615-17.  She also indicated that plaintiff would be off task for 30 percent of an eight-hour workday, absent more than six days per month, and be unable to complete an eight-hour workday due to periodic medical treatment or mental impairments for more than six days per month.  Id. at 617.

However, as the ALJ and the Commissioner note, these severe limitations are inconsistent with NP Behling's own progress notes, and the progress notes of other treating sources at Oswego Hospital Behavioral Services, which indicate generally unremarkable mental status examinations.  See, e.g., T. 428, 435, 437, 439, 506-07, 511-12, 524, 528, 537-38, 629, 632, 636, 642, 650, 663-64, 669, 686-87, 688.  Moreover, the record demonstrates that plaintiff's condition improved on medications — i.e., she indicates that she was able to socialize more, that she had been "calmer," she indicated that things had been going well, and that her family had noticed a difference in her mood and attitude.  See T. 435, 528, 632, 636; see also id. at 636 (indicating that plaintiff presented to the appointment "smiling [and] happy" and that she stated that "[s]he feels a lot better); 656, 663, 669 (denoting that plaintiff "continu[ed] to do well and [was] getting out of the apartment more frequently"; and that "she volunteered to pick up some items at

23

the store on her own which she said was a big step for her."); 842 (indicating that plaintiff reported no periods of depression).

As to plaintiff's argument that "all of [p]laintiff's mental health treatment occurred with various providers at Oswego Behavioral Services, so her past treatment records were available to her current providers," Dkt. No. 9 at 18, the Court notes that, even assuming NP Behling had access to plaintiff's past records, the records, as cited above, are inconsistent with the disabling limitations NP Behling opined in the check-box form. See supra, at 23-24. As the Commissioner notes, the record does demonstrate that plaintiff experienced symptoms relating to her mental impairments, Dkt. No. 8 at 71 (citing T. 514-22); however, it was within the ALJ's discretion to weigh NP Behling's medical opinion against these impairments and the other medical evidence in the record and afford NP Behling's opinion weight accordingly. See Johnson v. Colvin, No. 6:15-CV-179 (GLS/ATB), 2016 WL 5390342, at *2 (N.D.N.Y. Sept. 27, 2016) ("[A]n ALJ has the discretion to weigh the opinions of non-medical sources, such as teachers, against other evidence of record."); Martinez on behalf of M.G. v. Comm'r of Soc. Sec., No. 16-CV-1153 (PKC/RLE), 2017 WL 4232578, at *3 (S.D.N.Y. Sept. 22, 2017) (concluding "that the ALJ properly exercised his discretion to weigh medical opinions and to explained the basis for the weight he assigned to those opinions."). As such, the Court concludes that the ALJ properly assessed NP Behling's medical opinion, and remand is inappropriate on this basis.[5]

---

[5] As the Commissioner argues, the record does not support NP Behling's assessment of plaintiff's alleged seizures and hearing impairments. Dkt. No. 12 at 13 (citing T. 67). Nor does plaintiff mention those alleged impairments in her argument. As such, for the sake of completeness, the ALJ did not err in

The ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the opinions of record and plaintiff's medical records.

As such, the Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for her analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.

## III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Xenia L.'s motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

---

rejecting this portion of NP Behling's opinion.

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: July 29, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge